UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| SONIA VALVERDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 5:08-CV-158-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Sonia Valverde filed this suit seeking judicial review of a decision of the Commissioner of Social Security, Michael J. Astrue, pursuant to 42 U.S.C. § 405(g).

**I.    Statement of the Case**

Valverde is a fifty year old woman (*See* Tr. 67) with a fifth grade education (Tr. 503), and past work experience as a waitress, security guard, construction driver, convenience store clerk, and assistant manager. (Tr. 88). She applied for benefits claiming that, as of January 1, 2003, she became disabled because of diabetes, breast cancer, hepatitis C, high blood pressure, and high cholesterol. (*See* Tr. 108.) The Commissioner denied her application initially (Tr. 37-40, 51-55) and on reconsideration. (Tr. 44-50.) An Administrative Law Judge (ALJ) conducted a hearing and denied her claim as well. (Tr. 13-24.) The Appeals Council denied review. (Tr. 4-6.)

Valverde contends the ALJ erred in his credibility assessment concerning the frequency of her symptoms as well as the side-effects of her treatment. She asserts that the treatment of her disorders caused non-exertional limitations that were not properly considered. She also argues that the ALJ's credibility assessment is not supported by substantial evidence. The United States District Judge transferred this case to the United States Magistrate Judge. Valverde did not consent to the

jurisdiction of this court. Pursuant to the transfer order, the undersigned files this Report and Recommendation and recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## II.     Discussion

In reviewing a determination by the Commissioner of Social Security the court is limited to two issues: "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). The Supreme Court has defined "substantial evidence" as more than a scintilla and less than a preponderance. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "is of such relevance that a reasonable mind would accept it as adequate to support a conclusion." *Falco*, 27 F.3d at 162.

### A.     *Credibility Assessment*

According to the regulations, the ALJ was required to consider the type, dosage, effectiveness, and side effects of any medication that Valverde takes or has taken to alleviate her pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (2008).

Valverde testified that she suffers from adverse side effects as a result of her hepatitis C treatment. (*See* Tr. 504-05.) Specifically, she stated that she suffered from the following side effects: nauseousness, terrible headaches, diarrhea, dry mouth, dry skin, fatigue, depression, trouble sleeping (Tr. 511), lack of appetite (Tr. 512), coughing, and vomiting (Tr. 513). Valverde also testified that during her chemotherapy and radiation treatments she was nauseous, dizzy, weak, and always in a lot of pain. (Tr. 509.) All of the side effects alleged by Valverde are consistent with the

adverse side effects mentioned in the regulations regarding treatment for hepatitis C[1] and cancer.[2] Moreover, the record substantiates her testimony in regard to side effects.[3]

Despite the seriousness of the treatment and the adverse side effects involved, the hearing transcript shows that the ALJ barely inquired into Valverde's symptoms and side effects. (*See* Tr. 504-06.) The ALJ's questioning of Valverde's medical impairments, symptoms, and side effects yielded only two pages worth of testimony. *See id*. The transcript also indicates that the ALJ lacked an understanding of Valverde's hepatitis C treatment. (*See* Tr. 505.) In response to Valverde's testimony that she is on Pegasys and ribavirin treatment for her hepatitis C, the ALJ stated, "I guess that's medication. Is that what you're telling me?" (Tr. 505.) In his decision, the ALJ dedicated a minimal discussion to Valverde's reported symptoms and side effects during her hepatitis C and cancer treatments. (*See* Tr. 20-21 (stating "At the hearing, the claimant testified as follows: . . . Her symptoms during breast cancer treatment included nausea, dizziness, weakness, and pain. She is currently being treated for hepatitis C. Her symptoms are nausea, headache, diarrhea, dry mouth,

---

[1] The regulations state that the adverse side effects of hepatitis C treatment may include: anemia, neutropenia, thrombocytopenia, fever, cough, fatigue, myalgia, arthralgia, nausea, loss of appetite, pruritus, insomnia, behavorial side effects, and influenza like symptoms following interferon injections. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 5.00(D)(4)(c)(ii).

[2] The regulations also indicate that the adverse side effects of cancer treatment may include continuing gastrointestinal symptoms, persistent weakness, neurological complications, cardiovascular complications, and reactive mental disorders. 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.00(G)(2)(b).

[3] (Tr. 151, 158 (fever, weight loss, and anorexia) Tr. 244 (fatigue, sleeping problems, and a reduced appetite) Tr. 245 (diagnosed with a mood disorder) Tr. 253 (headaches and slight depression) Tr. 254, 256, 372-73 (headaches, joint pain, diarrhea, depression, fatigue, and sleeping problems) Tr. 280 (joint pain) Tr. 317, 380 (coughing and vomiting) Tr. 386 (depression and pain) Tr. 454 (nausea and vomiting) Tr. 457 (depression).)

dry skin, fatigue and depression."))

In his decision the ALJ noted that Valverde was not being treated for problems with her hands (Tr. 20), and that despite being instructed to see a rheumatologist in September 2006 for further evaluation, there was no evidence that she followed up on the recommendation (Tr. 22). The ALJ also stated that Valverde "had some arthralgias related to her therapy but no clinical features suggestive of lupus erythematosus." (Tr. 19.) Both of these statements are incorrect. The medical records reveal that Valverde was referred to a rheumatologist for further evaluation of her arthralgias and elevated antinuclear antibody levels[4] in September 2006. (Tr. 409.) A record from the following month indicates that Valverde was diagnosed with lupus. (Tr. 408.) At her administrative hearing on November 29, 2006, Valverde testified that she could not be treated for her hand problems but that she had an appointment scheduled for the following month[5] (December 2006). (*See* Tr. 505.) Valverde's testimony provides evidence that she followed up on the recommendation. Moreover, the ALJ's statements suggest that he failed to consider Valverde's lupus, which might be another side effect of her medications.[6]

---

[4] Antinuclear antibodies or ANA show "an affinity for nuclear antigens including DNA found in the serum of a high proportion of patients with systemic lupus erythematosus, rheumatoid arthritis, and certain collagen diseases." STEDMAN'S MEDICAL DICTIONARY 97 (27th ed. 2000).

[5] The transcript shows that the ALJ did not inquire into why Valverde could not be treated for her hand problems. (*See* Tr. 505.) At the hearing, the ALJ asked if anyone had ever treated Valverde for the problems with her hands. (Tr. 505.) Valverde stated that, "Right now, they can't." *Id*. The ALJ responded, "So the answer is no?" *Id*.

[6] *See* STEDMAN'S MEDICAL DICTIONARY 1036 (drug-induced lupus is "the syndrome of systemic lupus erythematosus induced by exposure to drugs").

The ALJ concluded that Valverde had impairments that could reasonably be expected to produce the symptoms that she alleges and which would impact her ability to perform work-related activities; however, the ALJ found Valverde not fully credible to the extent that she alleged impairments so severe as to preclude the performance of all sustained work activity. (Tr. 22.) Assuming the record would permit an inference that Valverde was exaggerating her symptoms to an extent, it is still apparent from the record that Valverde suffered from non-exertional limitations that impacted her ability to work. However, the ALJ found none. Because the ALJ failed to adequately consider the adverse side effects of Valverde's treatments, this court finds that the ALJ erred in his credibility assessment and that his assessment was not based on substantial evidence. Remand is, therefore, required.

Valverde also argues that the ALJ should have sought medical expert testimony concerning the side effects of her prescribed treatment. Because the ALJ's decision does not indicate that he considered the adverse side effects of her treatment, this court agrees that the ALJ should have sought medical expert testimony. Upon remand the ALJ should obtain medical expert testimony.

**III.    Recommendation**

Based on the foregoing discussion of the issues, evidence, and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Valverde's case for further administrative proceedings.

**IV.    Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.

A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: May 28, 2009.

NANCY M. KOENIG
United States Magistrate Judge